UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

|  |  |
|---|---|
| STACY BAKER, | : |
| Plaintiff, | : Case No._____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| TAUBMAN CENTERS, INC., MAYREE C. CLARK, MICHAEL J. EMBLER, JANICE L. FIELDS, MICHELLE J. GOLDBERG, NANCY KILLEFER, CIA BUCKLEY MARAKOVITS, ROBERT S. TAUBMAN, RONALD W. TYSOE, and MYRON E. ULLMAN, III, | : JURY TRIAL DEMANDED |

------------------------------------------------------

Plaintiff Stacy Baker ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action against Taubman Centers, Inc. ("Taubman" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company and The Taubman Realty Group Limited Partnership (the "Taubman OP") to Simon Property Group, Inc. ("Simon"), through Simon Property Group, L.P. (the "Simon OP"), Silver Merger Sub 1, LLC, and Silver Merger Sub 2, LLC (the "Proposed Transaction").

2.      On February 10, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which each Taubman stockholder will receive $52.50 per share in cash for each share of Taubman common stock they own.

3.      On May 29, 2020, defendants filed a Definitive Proxy Statement on Schedule 14A (the "Proxy") with the SEC.  The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) Taubman's financial projections; (ii) the financial analyses performed by the special committee of the Board's ("Special Committee") financial advisor, Lazard Frères & Co. LLC ("Lazard"); and (iii) the background of the Proposed Transaction.  Accordingly, without additional information the Proxy is materially misleading in violation of the federal securities laws.

4.      The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.    This Court has jurisdiction over the defendants because each defendant is either a corporation that is headquartered in, conducts business in, and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Taubman common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.    Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Taubman.

9.    Defendant Taubman is a Michigan corporation with its principal executive offices located at 200 East Long Lake Road, Suite 300, Bloomfield Hills, Michigan 48304.  Taubman's common stock trades on the New York Stock Exchange under the ticker symbol "TCO."

10.    Defendant Mayree C. Clark has served as a director of the Company since January 2018.

11.    Defendant Michael J. Embler has served as a director of the Company since January 2018.

12.    Defendant Janice L. Fields has served as a director of the Company since January 2019.

13.    Defendant Michelle J. Goldberg has served as a director of the Company since May 2019.

14.     Defendant Nancy Killefer has served as a director of the Company since December 2019.

15.     Defendant Cia Buckley Marakovits has served as a director of the Company since 2016.

16.     Defendant Robert S. Taubman has served as Chairman of the Board since December 2001, President and Chief Executive Officer ("CEO") of the Company since 1990, and a director of the Company since 1992.

17.     Defendant Ronald W. Tysoe has served as a director of the Company since 2007.

18.     Defendant Myron E. Ullman, III serves as Lead Director and has served as a director of the Company since December 2016.

19.     Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

20.     Relevant non-party Taubman OP owns direct or indirect interests in all of Taubman's real estate properties.

21.     Relevant non-party Simon is a Delaware corporation with its principal executive offices located at 225 West Washington Street, Indianapolis, Indiana 46204.  Simon's common stock trades on the New York Stock Exchange under the ticker symbol "SPG."

22.     Relevant non-party Simon OP is a Delaware limited partnership that is a majority-owned subsidiary of Simon, owning all of Simon's real estate properties and other assets.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and Proposed Transaction**

23.     Taubman operates as a self-administered and self-managed real estate investment trust ("REIT") and is structured as an umbrella partnership REIT ("UPREIT").  In the Company's

UPREIT structure, Taubman's sole asset is its ownership of approximately 70% of the general partnership interest in the Taubman OP, which owns direct or indirect interests in all of Taubman's real estate properties.  The Taubman Company LLC (the "Manager") provides certain management and administrative services for Taubman and for Taubman's U.S. properties.

24.     Taubman owns, manages, leases, acquires, disposes of, develops, and expands shopping centers and interests therein.  As of December 31, 2019, the Company's owned portfolio of operating centers consists of 24 urban and suburban shopping centers operating in 11 U.S. states, Puerto Rico, South Korea, and China.

25.     On February 10, 2020, Taubman announced its fourth quarter and full year 2019 financial results, which included the following: total portfolio net operating income ("NOI") growth at the Company's beneficial interest, excluding lease cancellation income, was up 3.9% for the year and up 4.6% for the quarter; for the full year, comparable center NOI, excluding lease cancellation income was up 0.2%, and up 1.4% at the Company's share; fourth quarter comparable center NOI, excluding lease cancellation income was up 1.7% at the Company's share; and industry-leading sales per square foot of $876 was up 3.1% for the quarter and average rent per square foot was up 1.6% for the year.  Commenting on the Company's results, defendant Robert Taubman stated, "We were pleased with our NOI growth in a year where we experienced elevated tenant bankruptcies and unfavorable foreign currency exchange rates. . . . Our high-quality portfolio of assets continues to grow, notwithstanding a volatile retail environment."

**The Proposed Transaction**

26.     On January 28, 2020, Taubman and Simon issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

INDIANAPOLIS and BLOOMFIELD HILLS, Mich., Feb. 10, 2020 -- Simon Property Group, Inc. (NYSE: SPG) ("Simon") and Taubman Centers, Inc. (NYSE:

TCO) ("Taubman") today announced that they have entered into a definitive agreement under which Simon will acquire an 80% ownership interest in The Taubman Realty Group Limited Partnership ("TRG").  Simon, through its operating partnership, Simon Property Group, L.P., will acquire all of Taubman common stock for $52.50 per share in cash and the Taubman family will sell approximately one-third of its ownership interest at the transaction price and remain a 20% partner in TRG.

TRG is engaged in the ownership, management and/or leasing of 26 super-regional shopping centers in the U.S. and Asia.  TRG's ownership includes 24 high-quality retail assets (including 21 in the United States and 3 in Asia), consisting of approximately 25 million feet of gross leasable area, and will continue to be managed by its existing executive team, under the leadership of Taubman Chairman, President and Chief Executive Officer Robert S. Taubman, in partnership with Simon.  The parties have agreed to work together to implement best practices to achieve operational efficiencies and will eliminate Taubman's public company costs immediately following closing.

The transaction has been unanimously recommended by a Special Committee of independent directors of Taubman and approved unanimously by the Boards of Directors of both companies.  Simon expects to fund the total required cash consideration of approximately $3.6 billion with existing liquidity.

Simon Chairman of the Board, Chief Executive Officer and President David Simon stated, "We are very pleased to announce this transaction, which will be immediately accretive to Simon's FFO.  By joining together, we will enhance the ability of TRG to invest in innovative retail environments that create exciting shopping and entertainment experiences for consumers, immersive opportunities for retailers, and substantial new job prospects for local communities.  I look forward to partnering with Bobby and the TRG executive team in this exciting new joint venture."

Myron E. Ullman, Lead Director of the Taubman Board of Directors and Chairman of the Special Committee of the Taubman Board of Directors, added, "The Taubman Board of Directors has always been focused on maximizing shareholder value. With this transaction, we will deliver a significant, immediate cash premium to shareholders. The Special Committee of the Board unanimously believes that this transaction with Simon is a great outcome for all of our stakeholders."

Robert S. Taubman, Chairman, President and Chief Executive Officer of Taubman, added, "Since Taubman Centers' founding 70 years ago, we have built a portfolio of high-quality assets and continuously adapted to the evolving retail landscape. I am proud of all that this company's talented employees have achieved and am thrilled to have the opportunity to join together with Simon through this joint venture. Over the last few years, David and I have developed an excellent personal relationship and importantly, Simon shares our commitment to serving retailers,

shoppers and the communities in which we operate.  The Board and I are confident that Simon is the ideal partner to help us build on our progress."

**Strategic and Financial Rationale**

- **Simon to acquire an 80% interest in TRG, which owns a highly productive mall portfolio.** The purchase price represents an underwritten capitalization rate of approximately 6.2%.

  ***

- **Immediate accretion for Simon shareholders.** The transaction is expected to be at least 3% accretive to Simon's Funds From Operations (FFO) per share on an annualized basis, beginning immediately upon consummation of the transaction.

- **Develop innovative retail environments.** The transaction will enhance TRG's ability to invest in innovative retail environments for retailers and consumers, deliver exciting shopping and entertainment experiences to consumers, and create new job prospects for local communities.

**Transaction Details**

Required approvals for the transaction include: (i) two-thirds of the outstanding Taubman voting stock and (ii) a majority of the outstanding Taubman voting stock not held by the Taubman family.  The Taubman family, which represents approximately 29% of outstanding Taubman voting stock, has agreed to vote in favor of the transaction.  The transaction is also subject to customary closing conditions and is expected to close in mid-2020.

Taubman will be releasing its fourth quarter and full year 2019 earnings this morning in a separate press release.

**The Proxy Misleads Taubman Stockholders by Omitting Material Information**

27.     On May 29, 2020, defendants filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) Taubman's financial projections; (ii) the financial analyses performed by Lazard; and (iii) the background of the Proposed Transaction.

***Material Omissions Concerning the Company's Financial Projections***

28.    The Proxy omits material information regarding the Company's financial projections.

29.    The Proxy sets forth:

On December 20, 2019, the Special Committee held a meeting, which was attended by representatives of Taubman's senior management, Kirkland, Lazard and Goldman. At the meeting, Taubman's senior management reviewed with the Special Committee a set of preliminary financial projections that the Special Committee had instructed management to prepare in the context of evaluating a transaction with Simon, with management noting that such projections remained incomplete pending additional details that management was still preparing. The Special Committee reviewed with management the key drivers and rationale behind the preliminary financial projections, including the shifting retail landscape, and views on the achievability of such projections. During an executive session of the Special Committee, the Special Committee concluded that it should receive and review the additional portions of such projections prior to making any final determination with respect to such projections.

Proxy at 26-27.  The Proxy fails to disclose the preliminary financial projections reviewed at the December 20, 2019 Special Committee meeting that the Special Committee instructed Taubman management to prepare in the context of evaluating a transaction with Simon.

30.    With respect to these projections reviewed at the December 20, 2019 Special Committee meeting, the Proxy also fails to disclose the additional details of these projections that Company management was still preparing and the effect the additional portions of these projections had on the Company's projections that are disclosed in the Proxy and utilized by Lazard.

31.    Additionally, the Proxy fails to disclose the following financial metrics for the Company over the projection period: (i) GAAP comparable NOI; (ii) funds available for distribution; (iii) funds available for distribution per share/unit; (iv) net change in cash pre and post distribution; and (v) all line items underlying the Company's unlevered free cash flow,

including (a) straight-line rent adjustments, (b) straight-line of ground leases, (c) share-based compensation; and (d) net proceeds from dispositions, less taxes, less capital expenditures.

32.     If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.

33.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Certain Unaudited Prospective Financial Information."

***Material Omissions Concerning Lazard's Financial Analyses***

34.     The Proxy omits material information regarding Lazard's financial analyses supporting its fairness opinion.

35.     The Proxy describes Lazard's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Lazard's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Taubman's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Lazard's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

36.     With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) Taubman's (a) net tangible other assets and liabilities, (b) value of peripheral land, (c) outstanding principal amount of share of consolidated secured debt, (d) outstanding principal amount of other credit facilities and term loans, (e) outstanding principal amount due to the holders of Taubman Series J Preferred Stock and Taubman Series K Preferred Stock, and (f) cash and cash equivalents utilized in the analysis; (ii) the implied (a) perpetuity growth rates, (b) 2023 funds

from operation multiple, and (c) EBITDA multiple resulting from the analysis; and (iii) the individual inputs and assumptions underlying the discount rates ranging from 5.50% to 6.75%.

37.     With respect to Lazard's *Comparable Companies Public Trading Analysis* and *Precedent Transaction Valuation Analysis*, the Proxy fails to disclose: (i) the individual multiples and financial metrics for each of the companies analyzed by Lazard; (ii) the financial metrics for each of the transactions analyzed by Lazard; and (iii) the financial multiples and financial metrics for the select additional reference REIT transaction observed by Lazard.

38.     With respect to Lazard's *Analyst Price Targets Analysis*, the Proxy fails to disclose the identity of the analyst, each of the analyst's price targets and the date the price target was set.

39.     With respect to Lazard's *Premiums Paid Analysis*, the Proxy fails to disclose: (i) each of the select precedent U.S. REIT transactions analyzed by Lazard; and (ii) the transaction premium to (a) unaffected price, (b) 1-day VWAP, and (c) 20-day VWAP for each of the transactions.

40.     Without such undisclosed information, Taubman stockholders cannot evaluate for themselves whether the financial analyses performed by Lazard were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Lazard's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

41.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Opinion of Financial Advisor to the Special Committee."

- 10 -

*Material Omissions Concerning the Background of the Proposed Transaction*

42.     The Proxy omits material information concerning the background of the Proposed

Transaction.

43.     The Proxy sets forth that "[o]n January 12, 2020, Lazard provided Ms. Marakovits

with preliminary financial analyses relating to [Simon's] January 9 Proposal, to assist Ms.

Marakovits in her discussion with Mr. R. Taubman and Mr. Simon scheduled for later that day."

*Id.* at 29.  The Proxy fails to disclose Lazard's preliminary financial analyses relating to Simon's

January 9 proposal provided to defendant Marakovits.

44.     The omission of this material information renders certain portions of the Proxy

materially misleading, including, inter alia, the following section of the Proxy: "Background of

the Transactions."

45.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the

irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

46.     Plaintiff repeats all previous allegations as if set forth in full.

47.     During the relevant period, defendants disseminated the false and misleading Proxy

specified above, which failed to disclose material facts necessary to make the statements, in light

of the circumstances under which they were made, not misleading in violation of Section 14(a) of

the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

48.     By virtue of their positions within the Company, the defendants were aware of this

information and of their duty to disclose this information in the Proxy.  The Proxy was prepared,

reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections, Lazard's financial analyses, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

49.    The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

50.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

51.    Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

52.    Plaintiff repeats all previous allegations as if set forth in full.

53.    The Individual Defendants acted as controlling persons of Taubman within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Taubman, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

56.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Taubman's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Taubman, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 15, 2020

*s/ William B. Federman*

**FEDERMAN & SHERWOOD**
William B. Federman (WF9124)
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
-and-
212 W. Spring Valley Road
Richardson, Texas 75081

*Attorneys for Plaintiff*